Good morning, Your Honors. My name is Tom Weirwick, and I represent the appellant James Don McBride. I'll request about two minutes of rebuttal, and I'll keep a good eye on it. Okay. Mr. McBride has consistently stated that after five guards and their supervisor beat him with constant blows to his head and face, the two of the very same guards who inflicted his injuries entered his cell on multiple occasions and, in a pattern of intimidating conduct, told him that he was lucky that his condition was not much worse. This Court should reverse the remand because, while drawing all reasonable inferences in Mr. McBride's favor under the Federal Rules of Civil Procedure, a reasonable factfinder could conclude that Mr. McBride was reasonably deterred by this pattern of intimidating conduct within the 15-day window that California provided for pursuing a grievance. So the issue is whether that statement was meant as a congratulations or as a threat? Well, Your Honor, I don't know if there's any evidence in the record that would allow you to conclude that it was congratulations because the only person who is alleging that it was even said is Mr. McBride. The defendants state that they didn't make the statement at all. The only person who alleges that the statement was made is Mr. McBride, and he alleges that he was reasonably threatened by it. What does the District Court say? Well, the District Court concluded that the statement was a mere statement of fact and not overtly threatening, but I don't see any evidence in the record that actually allows that conclusion because the only person who says it was made says that it was made in a threatening manner that reasonably deterred him. But isn't the question whether or not a reasonable inmate who would have heard that and who was of sufficient firmness and fortitude would have felt threatened by that? That's the issue, right? Yes, Your Honor. And the magistrate judge found that as a matter of law that it wasn't sufficient, right? You're correct. The magistrate judge found that as a matter of law, the allegations that two officers who are alleged to have just beat an inmate entered his cell on multiple occasions in administrative segregation, including one officer who claims that he had no reason to even be in that unit, that as a matter of law that could never be sufficiently threatening. So what's the closest case that you can think of where an inmate has been issued a threat like that, where it would have been sufficient to withstand a motion to dismiss or now a motion for summary judgment? Well, Your Honor, I think if you look at Tuckall, we don't even have actual statements. We just have conduct. In Hemphill, there's no statement that refers to the grievance procedure. They just say don't go to the clinic, drop it. And I think what we have here, and I'll admit that it's a closer case, but the question is— They didn't say just drop it. They said drop the complaint. I mean there was no question what they were supposed to drop in Hemphill. Well, they were telling him to not go to the clinic and to drop his complaints, yes, but they never said don't go to the grievance procedure. And the question here is could an inmate who is recovering from his injuries in administrative segregation have two of the people who just inflicted those injuries come into his cell on multiple occasions, he alleges, on more than one time? Could he have felt reasonably intimidated to not pursue a grievance within 15 days, which is what California required at the time? You have more questions. I do. Go ahead. If you don't mind. I've got a couple, but I wanted to wait for you. I assume most of my time the first time. Go ahead. All right. I was looking at the Turner case, and I was looking at the threat that was made in that case. That was very different than the threat in this case, isn't it? The Turner case is obviously an extreme case. That is a case in which the warden is tearing up the grievance in front of the inmate. I have no doubt that that's a different case. The question here is, though, when we view all reasonable inferences in Mr. Brickbride's favor, could a fact finder conclude that he was reasonably deterred? In the federal rules of civil procedure, if you have a case in civil litigation that is based on the defendant's conduct and the only thing you come in on your motion for summary judgment is declarations from the defendant saying they didn't do it at all, we're reduced to the kind of credibility determinations that a judge cannot make on summary judgment. But if we take your position as being accurate, then all that an inmate has to say was, I felt threatened, and that's enough to overcome a motion to dismiss or a motion for summary judgment and take you to trial? No, Your Honor, I disagree. The inmate has to present some kind of intimidating conduct that would present the kind of question on which summary judgment could be denied. And here, this is not an offhand comment. This is two of the people alleged to have beat him coming into his cell on repeated occasions with no apparent other purpose than to intimidate him. In order to get to your particular situation, this Court would have to adopt a new test for unavailability, wouldn't we, that we've never adopted before? This Court would have to join the 2nd, 7th, 10th, 11th, and even the 3rd Circuit. You didn't answer my question. Yes, Your Honor. The answer is yes. Yes. So you say we ought to join one of these circuits, and I guess are you willing to live with the 11th Circuit test? The objective and subjective test? Yes. Yes, Your Honor. You're willing to work? Yes. And so on this record, are there any facts that are not in the record? Are there any facts that are not in the record? Correct. There's an entire discoverable universe that Mr. McBride has had known. Well, now, just a minute. Now, just a minute. It seems to me that if you were going to suggest there are facts, they would have been there someplace. I see what he alleged. I see what's here. I see a district court who's made a decision based on the facts that were in front of him at that particular point in time. So it seems to me we're down to a question of law again, even if we apply the 11th Circuit test, which is number one, subjective, and number two, objective. So this district court, based on the 11th Circuit test, and I read what the district court said, assumed the statement was made resolving it to that fact in favor of the plaintiff. Statement, all of that said, statement was not threatening as a matter of law because the comments merely state a fact and are not overtly threatening. That was what is said. Do I owe any deference to that fact finding? No, Your Honor, where the district court explicitly states that it is treating the allegations as true. This is exactly the situation we faced in Albino. Well, but I understand that, but we're now on summary judgment. We're past exhaustion now if we adopt the 11th Circuit test. So now we're more in do we have really a case to be made? We've got all the facts that are in the case. They're all outlined, and now we're deciding under 11th Circuit test whether there's enough to get there. Do I owe any deference to the district court for the fact finding they did in this situation? I have two responses to that. The first is the district court explicitly stated that it was not making findings of fact. The second is that any finding of fact that the statement was made in any benign manner would be clearly erroneous because there is no evidence in the record that would support it. The only person who alleges that the statement was made at all is Mr. McBride. All right. So then I've got to find, based on law, that this one statement I know of may be made two or three times, I don't know, is enough to meet the test or at least enough to what? What would the jury hear that I can't hear? Well, Your Honor, the first thing is that the use of the unenumerated Rule 12b procedure did not allow Mr. McBride to seek discovery and perhaps be able to prove this in a much more sufficient way. All he has – Did you ever argue that? I believe I did in the briefs, yeah. Absolutely. Well, if I understand it, I thought you just said that this wasn't just an isolated statement out of the blue, that this was by someone who had just done the beating. Absolutely. This is not the prison doctor. This is not a friendly guard in the yard. This is the very people alleged to have beat him with constant blows to his head and face and to have caused his nose to bleed and caused his eyes to swell shut. But what was the time that passed between the beating and when one of these statements was made? Well, it's unclear from the record, and I don't believe Mr. McBride had a calendar in administrative segregation. But his allegation is that I would have brought a grievance, but I was sufficiently threatened. Now I see I'm running short on time. I just have one quick question for you. What was it that he did that caused him to get beaten? Well, I think that's a little unclear, and I can unpack that if I may. The incident report – You may. It's pretty important if we ask the question. So the incident report is only cited in the motion to dismiss. So I should first answer the question. There is one account in the incident report from Defendant S. Lopez, the very defendant alleged to have made the threatening statements at issue, that indicates any personal knowledge that Mr. McBride initiated this incident. More importantly, below, the defendants did not cite in the motion to dismiss to the incident report to say that it had any relevancy, that the beginning of the incident had any relevancy to the determination of whether the threats were sufficient. It only cited it – the defendants only cited it to explain that he had been interviewed on the day of the incident. In other words, Mr. McBride's never had a reasonable opportunity to respond to the content, to the complete content, because unlike in Rules for Summary Judgment, where local Rule 260 would have applied and the defendants would have had to cite to every material fact they considered to be undisputed, they only cited this record to show that he'd been interviewed. So I think there's still discovery left, and if it is relevant, fact-finding will be made regarding how this incident began. The worry that I have, and I guess you're over time, but this is the worry. This is why I'm pinning you down. If we're really on a question of law, which it seems to me we then are, at this time it seems nobody says the officers ever threatened to beat him if he submitted a grievance. Nothing the officers said. They didn't even talk to him about a grievance. They didn't even mention a grievance. They didn't even mention future harm. If they were talking about retaliation, it may have been for the acts that he did, but I can't find grievance in there. I can't even find the officials even knew he was going to file a grievance. So I'm having a tough time based on your facts on a question of law getting where you want me to go. Well, Your Honor, I respond that intimidating conduct that is intended or whose effect is to silence someone generally necessarily includes deterring them from pursuing a grievance. When you look at SAP, when you look at Albino, when you look at Nunez, these courts say that if an inmate must take the journey of the administrative remedy, then prison officials cannot do something to impede the path. And this is the kind of intimidating conduct that can impede the path. And all we have to find while viewing every inference in Mr. McBride's favor on this question of law is whether a reasonable fact finder could conclude that a reasonable inmate of ordinary firmness and fortitude when being told on repeated occasions in his cell in administrative segregation that he was lucky, connoting that he might not be so lucky if he goes forward. If someone could reasonably pursue. That wasn't the statement. That wasn't the statement. That wasn't the statement. Well, it could be implied. If someone is coming into your cell on multiple occasions, including a defendant who has no reason to be there, certainly they're not there to, again, say congratulations. Well, okay. All right. I've heard your arguments. Thank you, Your Honor. Thank you. Thank you. May it please the Court. Suzanne Antley on behalf of Appalese. The district court properly found that Mr. McBride did not show that the grievance process was unavailable to him. The district court's decision was correct, and this court should affirm it. This case really boils down to one simple question. What kind of evidence is sufficient to defeat summary judgment? That's not a new question for this court. It's an old one. This court has already held that a conclusory, unsupported, self-serving affidavit is not sufficient to create a genuine issue of material fact so as to defeat summary judgment. That's all. So doesn't the question then become simply whether or not objectively, looking at it from an objective standpoint as a matter of law, we can say whether or not that statement was sufficiently threatening to persuade someone not to file a grievance? That's precisely it, Your Honor. The standard should be . . . So the state is arguing that we should adopt the Eleventh Circuit test as to whether this was an availability. Exactly. So you're really arguing for us to adopt the Eleventh Circuit test as did the plaintiff? What we're arguing is that the court should adopt a reasonableness test, and it doesn't even have to adopt that test because it has already applied that test in the cases in which it has addressed whether to excuse  And examples . . . The reason I ask the question, and I want you to focus in again, really my good colleague is applying the Eleventh Circuit's test, which has first a test that is subjective and second an objective test, and he's asked you to comment upon that. I just want to make sure that that's what you're really telling us to do. I think that what's important is the objective component of that test, and the Eleventh Circuit in Tuckall provided some helpful insight into the question that the Court's addressing today. The Court said, Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in administrative remedy becoming unavailable. And the Court also said this objective element, that is requiring an inmate to provide more than just his own subjective perception, would ensure that inmates cannot easily circumvent the exhaustion requirement. Well, if that were true, then he said, she said, the inmate loses. That is, the inmate says, the guard said this, and there's no one else there but the two of them. So the inmate loses. The inmate has full and fair opportunity to provide all the detail and all the facts that are available to support his claim of fear of retaliation. And in this case, in particular, that was true. Mr. McBride provided a declaration in which he could have provided any amount of detail that he wanted. There was nothing stopping him from filling out his declaration with additional information. And, in fact, what we're asking the Court to do is adopt a test that would require the inmate to support his claim, his subjective claim, with objective evidence, like the inmate in Caba did. There, the inmate provided the Court with three sworn affidavits, a lie detector test, a medical witness's expert testimony on his fear of retaliation. And we suggest that if an inmate is going to claim that he's afraid of retaliation, he should be required to provide the Court with that same kind of objective evidence. But don't you think your opponent is going to say, well, that's good now, we've got albino, but we didn't have albino there, so I need to go back and have another shot at it. And that's incorrect because, in this case, even under the old Wyatt standard, the inmate was... Well, under the old Wyatt standard, it would be easier for the State. But under the albino standard, he's going to argue, you've got to give me a chance to do some discovery. Well, and even under the old Wyatt standard, he could have done discovery. It's established that if there's a pending motion to dismiss, discovery can be conducted if it's limited to the purpose of that pending motion. He could have done that even under the old Wyatt standard. He could have provided any number of means of objective evidence to support his subjective claim, and nothing stopped him from doing that. There's no reason to go back and give him another shot at doing what he could have done already the first time around. Counsel, what do you make of the fact that he eventually did file a claim, unlike in the Eleventh Circuit, in the Turner case, where they did not file a claim, and then he filed an appeal, and the Court of Appeals, the Eleventh Circuit, was able to distinguish that and say, well, there's a difference between filing a grievance and then filing an appeal. And so they said because it was an appeal, that's different than a grievance. But in this case, he actually did file a grievance, right? He did, and that, of course, undermines his subjective claim that he was afraid to file a grievance. He didn't provide the court any evidence to explain why he was afraid from July to September, and suddenly he became brave in September. He didn't provide the court with any evidence to show that anything about that context that he described had anything to do with grievances. He didn't provide any evidence. Well, I thought the record is just the opposite. I thought at first he thought he was scared about it, but after he went along so long, he said, well, you know, if I don't do anything, this could go on forever, so I'm just going to take it on my own account to do it. He didn't say that he didn't know. He just said there came a time where I said, well, if I don't do it, I'm scared they'll do this again and again and again. I've got to do something about this. Well, that's correct. What he claims is that he was afraid and suddenly he became brave. He doesn't say he wasn't still afraid. But what's disturbing about his position is that he seems to be suggesting a whole new summary judgment standard, a whole new interpretation of the PLRA. Under his suggested standard, exhaustion would turn exclusively on the subjective perception of the inmate, and that would be a radical departure. That would also be contrary, directly contrary to what this court has recognized as the whole purpose of the exhaustion requirement. What the guards said was something like, you're lucky that it wasn't worse. And what the district court said was, well, that was just a statement of fact. He was lucky that it wasn't worse. Gee, you're lucky it wasn't worse, as a third party coming on and saying you're lucky it wasn't. And what he's saying is in the context of it, it means you're lucky it wasn't worse and it was a threat. Now, that is an ambiguous statement at least. How can you uphold the district court's interpretation of that statement in the context where it is the very guard who was involved in the beating? Well, we would take our guidance from the cases actually cited by and relied on by Mr. McBride. All of those cases involved a context that was very explicitly about grievances. Every one of them either involved ñ all of them explicitly involved grievances, but every one of them either involved an explicit threat or warning to the inmate against filing a grievance or involved actual violence against the inmate by the officers in response to his filing a grievance. Nothing like that happened in this case. And, in fact, every one of those cases, the courts in every one of those cases applied at least an objective standard. Two of them applied a two-prongedÖ You're arguing even if you interpret it as you're lucky that it wasn't worse, as having a different connotation than the district court gave it, that he would still have to show more. I do because that's the precedent. That is the protection against abuse of the exhaustion requirement. And, in fact, if we adopt Mr. McBride's approach, then inmates would be given the incentive never to exhaust because why would they when all they have to do is say, I was afraid to exhaust with nothing more? They have to provide objective evidence to support their claim. And we urge the court to reject the standard that Mr. McBride is proposing and allow the longstanding summary judgment standard to remain unscathed. The one point you haven't addressed, which I thought you would, is this part about immunity. Is there any qualified immunity here? I don't believe that we argue qualified immunity. All right. I just wanted to make sure. Thank you very much. Thank you. Mr. McBride. Sure. I'd just like to make three quick points. The first is that conclusory self-serving affidavits is exactly what the defendants presented in their evidence. It's three affidavits by the defendants at issue saying nothing more than that I didn't make the statement and I wasn't in the unit. There's no logs of where they were. There's no objective evidence they submitted that would in any way prove where they were at the time. The second is that Magistrate Alberto had expressly closed discovery until an answer was filed. And third, lastly, when I read Albino, I do not see any presumption that inmates lie. In other words, I don't see any presumption that district courts may apply that assumes that inmates lie any differently than any other civil litigant. Counsel? In the end, even when you look at Albino, in the end, it is the judge who's going to make the decision as to whether or not the claim was exhausted. Correct? Okay. Now, in this case, the judge had before him all of the facts that Mr. McBride had offered, right, for his position as to why he had not exhausted it. Well, he had all the facts that were available to him at the moment, but he had no opportunity to see what other discoverable evidence the defendants have. But who had the burden of establishing the reason for non-exhaustion? So when I read Albino, it says the defendants bear the ultimate burden of proof. What the plaintiff has when the defendants have proven that there's an existing remedy that has not been satisfied is the burden of production. He must provide an explanation. And then it's on the defendants who bear the burden of proof, and that's what Williams v. Paramo says. Just very quickly, can you think of a case under these circumstances where the inmate alleges that he or she did not exhaust because of a statement that was made that would not wind up going to trial? Your Honor, it does not have to go to trial. The district court, as fact finder, is allowed to make factual findings, but on this record it must at least conduct an evidentiary hearing to make credibility determinations, and it should give Mr. McBride an opportunity to see what kind of discoverable material is out there. So in conclusion, I ask that you reverse the remand. Thank you. Thank you very much. Case 12-17682 is submitted.
judges: Benitez, Schroeder, Smith